### SAMUEL CLAYCOMB
*v.*
### WILLIAM C. BUTLER.

1. AWARD — *impeachment thereof for fraud.* To induce a court of equity to interpose to set aside an award on the ground of fraud, proof of a satisfactory nature will always be required.

2. WITNESS — *competency — arbitrator.* An arbitrator is not a competent witness to prove his own misconduct.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. A. L. MERRIMAN, Judge, presiding.

This was a suit in chancery instituted by William C. Butler against Samuel Claycomb, in the Circuit Court of Warren county, and removed upon change of venue into the Circuit Court of Peoria county.

The object of the bill was to set aside an award of arbitrators upon the alleged ground of fraud, and to enjoin a suit upon the bond. The court below entered a decree setting aside the award, and perpetually enjoining the suit upon the bond. The defendant brings the case to this court upon writ of error. The case is sufficiently stated in the opinion of the court.

Messrs. McCULLOCH & TAGGART, for the Plaintiff in Error.

Mr. H. M. WEAD, for the Defendant in Error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, filed by Butler against Claycomb, to set aside an award, impeaching it for fraud, and alleging that the arbitrators exceeded the submission. The answer denies these charges. A replication was put in, and the cause set for hearing on bill, answer, replication and testimony. Afterwards, the venue was changed to Peoria county, where complainant amended his bill, alleging that the arbitrators, before proceeding to hear the testimony, were not sworn; that

they made no copy of their award, and delivered it, or caused it to be delivered, to the complainant; that the suit mentioned in the original bill was commenced before complainant had any notice of the award; that the arbitrators made and signed the award on Sunday; that they were not together when the award was agreed upon or signed; that the award was drawn up by one of the arbitrators without consultation with the others, either separately or when they were together, and when so drawn, it was taken by the defendant, Claycomb, to each of the arbitrators separately for their signatures, and they separately signed the same; that they signed the award before fully hearing the evidence; that when they adjourned the last time, after hearing part of the evidence, they expected to meet again to hear more evidence, but that Claycomb, in order to prevent the hearing of any more testimony, and for the purpose of defrauding complainant, falsely represented to the arbitrators that complainant was about to leave the State, and urged them to make the award immediately, so that he could sue the complainant on the award before he left the State, and the arbitrators were induced by Claycomb's representations and solicitations to make the award without any further hearing of the cause, and that the arbitrators greatly misbehaved in so making the award, alleging that such conduct was reprehensible and a fraud upon complainant.

These allegations were denied by the answer, and replication filed.

There was much testimony taken before the master, all which is in the record, to sustain these several allegations of the original and of the amended bill, but by no means satisfactory. After all the consideration we can give it, it is rendered at least doubtful, if any of the irregularities charged, occurred. The arbitrators were called as witnesses, and owing to the time that had elapsed since the award was made, they did not all of them speak definitely to any of the points, or agree in their testimony.

As to the allegation that the arbitrators were not sworn, neither Harding nor Quimby speak positively to the fact, but the

other arbitrator, Paine, does. He says, to the best of his recollection, Judge Quimby swore Mr. Harding and himself as arbitrators, and he, being a justice of the peace at the time, swore Quimby as arbitrator. He also states, Judge Quimby swore the witnesses. He states further, after hearing all the witnesses, the bystanders left the room, and they, as arbitrators, consulted for some time as to the award. He, Paine, was to draw the award and fill out with the items, of which Quimby had made a statement, which could readily be reduced and the amounts fixed. A space was to be left for Quimby to fill in the items when he had figured them up. On the Thursday following, he says they met in the office of Harding and Quimby, when the blank space in the award which Paine had left was filled up by Quimby with the items he was to figure up — that Quimby signed the award first, then he, Paine, signed it, and Harding wrote his name nearly over Judge Quimby's. The date he put to the award was changed to agreé with the date of that meeting. There was no adjournment for the purpose of taking further testimony. He further says, they only separated as he has stated, and when they met it was for the purpose of signing the award.

To induce a court of equity to interfere to set aside an award on the grounds stated in this bill, proof of a satisfactory nature will always be required. Such proof has not been presented in this case.

The next question is, did the arbitrators exceed their authority under the submission. The submission was of all matters, differences and dealings wherein the said Butler and Claycomb, and one James Means have been partners in business, of any kind or nature. This is very general and comprehensive. Butler stated to Paine, one of the arbitrators, to induce him to act, that he and Claycomb could make no settlement, and that he and Means thought that Claycomb was owing them quite an amount, and that he would not settle unless his account, and Means' account, and the account of Butler and Means in his store, should be reckoned in; that there should be a general settlement of all their business; that all three of them had been

in company slaughtering hogs, and that he and Means had sold out the slaughtering establishment to Claycomb; that Means was drinking pretty hard, and was running through everything he had; that Means owed him, and, by getting a settlement with Claycomb, he would get what was coming from Claycomb to Means in his own hands, and save what he had advanced him through Means' hands in their business.  He said he and Claycomb would arbitrate the whole matter, if he, Paine, would consent to act as one of the arbitrators; that they would reckon in all of the business as partnership matters and have it settled. All the matters passed upon, he says, were submitted by one or the other of the parties.  He then details the items.  Means testified that both complainant and defendant agreed that all the items mentioned in the award should be submitted to the arbitrators.  We cannot perceive wherein the arbitrators exceeded the submission, nor wherein consists the mistake, fraud, or misconduct of the arbitrators, unless it be on the part of Quimby, from whose testimony we might be led to infer he signed the award to enable Claycomb to sue Butler upon it before he left the State.  He is not a competent witness to prove his own misconduct.  *Stone* v. *Atwood et al.,* 28 Ill. 43.

We do not find any of the material allegations of the bill sustained by proof, consequently the decree must be reversed and the bill dismissed.

*Decree reversed.*