LEON TYBLEWSKI *et al.*

*v.*

THE SVEA FIRE AND LIFE ASSURANCE COMPANY *et al.*

*Opinion filed February 21, 1906—Rehearing denied April 5, 1906.*

1. ARBITRATION AND AWARD—*when failure to consider books of account does not justify setting aside an award.* In determining a fire loss the books of account are not the only evidence of the value of the stock on hand, and if the books are not produced, or if those produced are not believed by the appraisers to be truthful owing to apparent discrepancies, the appraisers may resort to other evidence.

2. SAME—*what irregularity does not justify setting aside award.* That the appraisers and the umpire acted together in making the appraisement and award, instead of the appraisers acting alone and calling in the umpire in case of dispute, does not require setting aside an award for a fire loss, where the owners of the goods were fully apprised of the course adopted and were present all the time except when the award was agreed upon, and where the appraisers and umpire acted fairly and impartially throughout.

3. SAME—*seeking benefits of award amounts to a ratification of it.* Filing proofs of loss in accordance with the terms of the appraisers' award and seeking the benefit thereof with full knowledge of the facts, and after having refused, at first, to accept the award, is a ratification by the insured of the award.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

STEPHEN A. FOSTER, E. C. LINDLEY, and PENCE & CARPENTER, for appellants:

When all or a portion of a stock of merchandise is totally destroyed, the appraisers and umpire must receive evidence and consider the books of the insured in arriving at the amount of loss on these totally destroyed goods. *Levine* v. *Insurance Co.* 66 Minn. 138; *Canfield* v. *Insurance Co.* 55 Wis. 419; *Kaiser* v. *Insurance Co.* 69 N. Y. Sup. 344; *Insurance Co.* v. *Bell,* 75 S. W. Rep. 319; *Schmidt Bros.* v. *Insurance Co.* 81 N. Y. Sup. 767; *Insurance Co.* v. *Gar-*

*rett,* 125 Fed. Rep. 589; *Insurance Co.* v. *Payne,* 57 Kan. 291; *VanCortland* v. *Underhill,* 17 Johns. 405; *Halstead* v. *Seaman,* 82 N. Y. 27; *Hart* v. *Kennedy,* 47 N. J. Eq. 51; *Hurdle* v. *Stallings,* 109 N. C. 6; *Insurance Co.* v. *Hamilton,* 48 Ill. App. 592; *Moshier* v. *Shear,* 102 Ill. 169.

The parties to such a submission agreement as the one here are entitled to the judgment of the appraisers free from any interference by the umpire, and to an award by the appraisers so far as they are able to agree. The umpire must act as such and not as a third appraiser. He cannot pass on those matters where no differences between the appraisers have been submitted to him. *Little* v. *Newton,* 9 Dowl. Pr. 437; *Insurance Co.* v. *Board of Education,* 49 W. Va. 360; *Luther* v. *Medbury,* 26 Atl. Rep. 37; *Schmidt Bros.* v. *Insurance Co.* 81 N. Y. Sup. 767; *Moshier* v. *Shear,* 102 Ill. 169.

JOSEPH E. PADEN, OSCAR A. KROPF, and GEORGE A. FOLLANSBEE, for appellees:

Courts look with favor upon arbitration as a method of settling disputes, and every presumption in favor of the validity of an award will be entertained. *Merritt* v. *Merritt,* 11 Ill. 565; *McDonald* v. *Arnout,* 14 id. 57; *Root* v. *Renwick,* 15 id. 461; *Ross* v. *Watt,* 16 id. 99; *Insurance Co.* v. *Payne,* 46 Pac. Rep. 315; *Burchell* v. *Marsh,* 17 How. 344; Watson on Arbitration and Award, 204; *Haywood* v. *Harmon,* 17 Ill. 477.

The strict rules applicable to a common law arbitration do not govern an appraisal under an insurance contract. It is not required that the appraisers take evidence. It is contemplated that the appraisers will be men familiar with the class of property to be appraised, and that they will for the most part rely on their own observation. *Hall* v. *Insurance Co.* 17 Atl. Rep. 359; *DeGroot* v. *Insurance Co.* 4 Robin. 504; *Remelee* v. *Hall,* 31 Vt. 582; *Insurance Co.* v. *Goehring,* 99 Pa. 13; *Fridecker* v. *Insurance Co.* 62 N. Y. 392.

If the arbitrators acted fairly and impartially in making an award the same will not be set aside because it may seem inadequate in amount. Neither should an award be set aside on merely technical grounds that in nowise affect the merits of the controversy. *Burchell* v. *Marsh,* 17 How. 344; *Canal Co.* v. *Swann,* 5 id. 88; *Insurance Co.* v. *Bonner,* 56 Fed. Rep. 378; *Chandos* v. *Insurance Co.* 19 L. R. A. 321; *Steere* v. *Brownell,* 113 Ill. 415; *Whittaker* v. *Wallace,* 1 Ky. L. 271; *Rigdon* v. *Martin,* 6 Har. & J. 403; *Kelderhouse* v. *Hull,* 116 Ill. 147; *Bangor S. B.* v. *Insurance Co.* 85 Me. 68; *Insurance Co.* v. *Davis,* 55 S. W. Rep. 705.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed on the 10th day of December, 1903, in the superior court of Cook county by the appellants against the Svea Fire and Life Assurance Company and nineteen other insurance companies, to set aside an award fixing the amount of loss by fire sustained by the appellants upon a stock of merchandise and for an accounting. Answers and replications were filed, and the case was tried in open court and a decree was entered dismissing the bill, which decree, upon appeal, was affirmed by the Appellate Court for the First District, and a further appeal has been prosecuted to this court.

The fire occurred on the 30th day of June, 1903, and the appellants having made a schedule of the property claimed by them to have been damaged or destroyed, presented the same to said insurance companies, and the appellants and the insurance companies having failed to agree as to the amount of loss and damage sustained by the appellants, on the 29th day of July, 1903, an appraisal agreement to determine the amount of said loss and damage, as provided in the policies, was entered into between the appellants and the insurance companies. The appellants selected Julius Kiper and the insurance companies Louis Lapiner as appraisers, and Kiper and Lapiner selected R. W. Owen as umpire. In case of

disagreement the policies provided the amount of loss and damage should be ascertained by two competent and disinterested appraisers, the insured and the companies each selecting one, and the two so chosen should select a competent and disinterested umpire. The appraisers together should then estimate and appraise the loss, stating separately sound value and damages, and failing to agree, should submit their differences to the umpire, and the award, in writing, of any two should determine the amount of such loss. The appraisers and umpire on the 8th day of August made an award, in which they fixed the sound value of the stock of merchandise at.$14,947.52 and the loss and damages on the same at $4978.48. The appellants were dissatisfied with said award, and on the 27th of August ignored the award and presented proofs of their loss and damage upon said stock of merchandise to said insurance companies, which the companies refused to accept, and subsequently, and on the 25th day of September, 1903, proofs of loss in conformity with said award were made and filed by the appellants with the insurance companies, which proofs were satisfactory to and accepted by the insurance companies.

The trial court, in its decree, found the following facts: (1) That after the fire a disagreement arose between the complainants and defendants as to the amount of loss and damage to complainants' property, and thereupon the amount of the loss and damage was submitted to appraisal, as provided by the terms and conditions of the policies of insurance; (2) that in making said appraisal the appraisers and umpire acted fairly and impartially, and signed and returned said award honestly and in accordance with their deliberate judgment, and that the charges of fraud or improper conduct on the part of said appraisers in the bill contained were not sustained by the evidence; (3) that said appraisers and umpire, in matters not material to their findings, proceeded irregularly, but that such irregularities did not have any prejudicial effect upon the substantial interests of the com-

plainants and in nowise affected the merits of the award; (4) that after the award was made, and after the complainants had full knowledge thereof and of all irregularities complained of by them, and with full knowledge of all acts done and performed by said appraisers and umpire, and on the 25th day of September, 1903, proofs of. loss on the part of said complainants were made and executed in conformity with the said award and delivered by complainants to defendants; that said proofs of loss were made and executed by said complainants with full knowledge of all facts connected with said appraisal and award, and were made and executed as a ratification and confirmation of the findings of said appraisers and umpire and in settlement of all claim against the defendants for the amounts claimed against each of them therein, and that the execution of such proofs on the part of said complainants was intended to be a ratification and confirmation of said appraisal and award by them at that time, and that said proofs of loss were accepted by all the defendants, and that said defendants were then, and have been at all times since then, and are now, ready and willing and offer to pay the said complainants the several amounts due from them, as designated in said proofs of loss.

The first contention made by the appellants is, that the appraisers erred in refusing to consider the books of account of the appellants in determining the amount of appellants' property which was totally destroyed by fire. It appears that the appellants submitted their books of account, or some of them, to Julius Kiper, the appraiser selected by them, a short time after his appointment, and that upon an examination thereof he discovered that appellants, in one instance, had purchased property for the sum of from $300 to $500 which was inventoried by them at from $4000 to $5000, and that his suspicions, by reason of that charge in the inventory, were aroused as to the correctness of the books of appellants, and that he thereupon stated to the appellants he could not "stand for the books," and that if they expected

him to do so he would withdraw as an appraiser.   It also appears that the appraisers and umpire visited the building where the fire occurred, examined the stock of merchandise, heard the statements of the appellants with reference to their loss and damage, and had before them the schedule prepared by the appellants showing the property which they claimed had been destroyed or damaged at the time of the fire.   They also had copies of some portions of appellants' books of account, which were furnished them by the appellants, and it does not appear that the account books of appellants were ever turned over to the appraisers or the umpire for their examination when they were together.   The only account book of appellants which was in the possession of either of the appraisers was the inventory which was delivered to Kiper by appellants, and that book was taken from his possession by the appellants before the other appraiser or the umpire saw it or was given an opportunity to examine it.   While it would have been proper for the appraisers or umpire to have examined appellant's books of account to determine the amount of stock which the appellants had on hand at the time of the fire, clearly the books were not the only evidence of that fact, and if the appellants did not produce their books, or if they did produce them and the appraisers or umpire were of the opinion they did not show the correct amount of merchandise on hand at the time of the fire, the appraisers or umpire might properly resort to other evidence to determine that fact, and if the appraisers and umpire did fully investigate the question of the amount of merchandise which the appellants had on hand at the time of the fire, as the evidence shows they did, a court of chancery would not be justified in setting aside their award by reason of the fact they did not examine appellants' books of account, especially where such books were not presented to them by the appellants for their examination, or if they believed the books of account did not truthfully show the amount of the stock which the appellants had on hand at the time the fire occurred.

In the case of *Root* v. *Renwick,* 15 Ill. 461, it was urged that the award should have been set aside because the arbitrators refused to hear or consider certain evidence which one of the parties offered to submit for their consideration. The court there said: "In *VanCortlandt* v. *Underhill,* 17 Johns. 509, the court lay stress upon the refusal of appraisers to hear relevant, material testimony, holding it to vitiate the award. Such might or might not be its effect in this case, but we cannot so rule without having the whole evidence before us which was before them. Every intendment is made in favor of the award. (1 Peters, 222; 34 Law Lib. 125; Watson on Arbitration and Award, 204; 11 Ill. 568.) We will not, therefore, presume fraud in the arbitrators from the fact that they rejected evidence in relation to an issue before them, but will presume that other evidence had so far settled that inquiry as to render further proofs unnecessary."

The appellants contend that case, however, is not in point, because they say the record in this case shows there was no other evidence as to the amount of property totally destroyed upon which the appraisers could properly base their award. The appraisers had before them the statement of the appellants that $8000 or $9000 worth of property had been totally destroyed,—that is, burned up. They saw the space or room in which the appellants claimed that property was stored at the time of the fire, and they had before them the original schedule prepared by the appellants showing the property which they claimed had been destroyed or damaged. In other words, they had before them the claim of the appellants as to their loss and damage by reason of the fire, and the only additional evidence the books would have afforded them would have been a more detailed statement, perhaps, of the particular articles which went to make up appellants' claimed loss of $8000 or $9000 than they otherwise had before them.

We are of the opinion the trial court did not err in declining to set aside the award on the ground that the appraisers did not have before them and did not consider more fully

the books of account of the appellants in making up their award.

It is next contended that the appraisers and umpire acted jointly in making the appraisement and award, and that such joint action invalidated the award. The evidence shows that Julius Kiper was anxious to leave the city, and that soon after the appraisers were appointed, they, in company with the umpire, went to the store of the appellants, and that the appraisers and umpire, in company with the appellants, went through the stock, and that the appraisers and the umpire made schedules of the merchandise which they found, and fixed prices upon the various articles with the amount of damage which in their opinion the same had sustained by reason of the fire, and that when they had completed said schedules, which took several days, they went over the same together and agreed upon the amount of the award. The appellants were fully advised as to the manner in which the work was being done, and were present substantially all the time except when the award was agreed upon by the appraisers and umpire. While it would have been more formal for the appraisers to have first gone through the stock and made lists and fixed the sound value and damages on each article, and, when they failed to agree, to have called in the umpire and submitted to him for settlement the matters in difference, what they did do in effect amounted to the same thing and produced the same result. The trial court found "that the said appraisers and umpire acted fairly and impartially in the conduct of said appraisement and award, and in good faith made, signed and returned said award honestly and in accordance with their deliberate judgment," and the evidence we think fully sustains that finding; and while we also think with that court that some of their proceedings were "technically irregular," we are convinced that the substantial interests of the appellants were not prejudiced thereby and that such irregularities in no way affected the merits of the award. We do not think, therefore, the court erred in re-

fusing to set aside the award by reason of the fact that the umpire was present at the time the appraisers were making their estimates of the amount the merchandise of appellants had been damaged.

Neither do we think the court erred in refusing to set aside the award on the ground of the misconduct of the appraisers or the umpire. The evidence shows the appraisers and umpire to have been responsible business men and that they acted fairly and impartially between the parties in making said appraisement and award. The record shows that the appellants, on September 25, 1903, after they had first refused to acquiesce in the award, filed proofs of loss in accordance with the award and sought the benefit of its terms. This action on their part was taken after they were possessed of a full knowledge of the facts, and amounted to a ratification and confirmation of the award.

Finding no reversible error in this record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*